Good morning, may it please the court, Joseph Oliva for Appellant Shambaugh and Sons, L.P., a Texas Limited Partnership. This de novo review is being requested by Shambaugh on the basis that the lower court committed error by not recognizing the tortious conduct that's alleged in the complaint and the allegations in the complaint for the purposes of this appeal have to be treated as true because there was no evidentiary hearing to refute any of the facts in the complaint. But the important point here is the complaint alleges serious breaches of statutory duties owed under the Texas Insurance Code and the Deceptive Trade Practices Act and further identifies a delay of 13 months before Steadfast had denied coverage, which is both a breach of the statutory rights as well as the standards under the insurance code that provides for timely and prompt responses to claims. Each of the causes of action for the tortious denial of coverage arises from specific facts that constitute a minimum contact with the state of Texas. Specifically, this policy was issued after an application for insurance was provided by the parent company, Emcor. And in that policy application, there's a long description of Shambaugh's description of business operations in Texas as well as its division, Northstar's, operations in Texas. Steadfast could have denied insuring those risks but chose not to. And agreeing to insure those risks and through endorsement 2 and 26 of the policy, which modifies the policy to make these entities named insureds under the policy, there are sufficient, significant, and qualitative contacts with the state of Texas. What part of the negotiations of the contract occurred in Texas? None that I know of. But the application that was a part of it. What part of the negotiations did Shambaugh participate in? They did participate in the sense that the application information was provided and reviewed and submitted by Northstar, Texas, Austin, Texas. Yes, Your Honor. And Shambaugh was either going to be in Texas or Indiana. I don't know where that review and application was filled out. But it was dealing specifically with Texas operations. Northstar only, virtually does only Texas operations. But is that enough when none of the negotiations occurred in Texas or with a Texas entity? No, the broker for the Amcor parent company was in New York and they were not involved, Shambaugh was not involved in the negotiations. The question of the dispositive issue, though, is whether once they were insured under the policy, does confer significant rights, duties, and obligations that identifies why personal jurisdiction is appropriate. Where the policy is negotiated, this is not an underwriting question, this is a claims handling question, the rights under the policy is dependent upon whether or not the risk was agreeable to be insured regardless of who negotiated it. That's a fortuitous issue. The convenience of the coverage is the important fact that was agreed to. And when it was agreed to, they could have declined at risk, but they didn't. They could have put a form limitation provision, but they didn't. So the point is that the policy rights, as any named insurer has, is entitled to redress for that tortious breach in the state where they were injured and where the tortious conduct was directed. Now, we have... Where was the tortious conduct argued before the magistrate judge? It was. And to answer your question directly, Your Honor... Good. Thank you. On page 30 of the appellee's brief, and I apologize, it's page 30, but it's page 43 of the docket, let me read and quote to you, steadfast brief. As the magistrate judge properly concluded, the tort alleged by Shambaugh, the wrongful denial of coverage, was committed by steadfast in New Jersey. Two issues. The magistrate judge dealt with the issue. It wasn't waived, number one. No. That's what I'm asking. I mean, did you argue, did you, Shambaugh, argue that steadfast conduct violated the Texas laws that are alleged in your complaint? It was alleged in the complaint, and it was not argued to the magistrate judge, but it was to the district court judge. It was raised in the objections. And argued to the district court judge. Isn't that too late? No. And the reason for that is when the complaint alleged all the tortious conduct, the magistrate judge rejected that the tort had any basis to confer jurisdiction. That was affirmed by the district court judge. There was no waiver. The judge made that decision and, I don't want to say ignored, but did not recognize the significance of the allegations of tortious conduct that was directed to the citizen of the district court in Texas. That's the key. Now, under Lampton, the briefing, this is on page 40 on our reply brief, identifies that no waiver occurs where the opposing party has a full opportunity to brief. And under Rollins, Rollins identifies that pure legal issues are never waivable. But regardless, the record does show that the magistrate judge and the district court judge . . . I don't know that that's what Rollins held. I was on that panel. It holds that we can treat legal issues that are purely legal issues if there would be a miscarriage of justice otherwise. I don't think there's a miscarriage of justice otherwise, and the reason being that an insured received a declination of coverage that was tortious. Did Steadfast ever send a letter to Shamball or Northstar in Texas? Well, to their counsel, yes. The counsel was not . . . In Texas? No, on outside counsel, but on behalf of . . . In other words, I'm asking, did they send any sort of denial or correspondence or here's your policy or anything like that to Texas? The legal representative for Texas was counsel that was not located in Texas. The denial letters were directed to Shamball as a Texas citizen, but it was received not by a Texas lawyer. But it wasn't received by . . . Well, actually, I'm a lawyer. I'm admitted to Texas, so I guess it does, even though I was not located in Texas. Well, I'm asking you if any sort of correspondence, any sort of contact directly came to Northstar's office in Austin from Steadfast. Directly? Your answer is no. Well, the answer is no, but Shamball, through its legal counsel, made the tender, Your Honor, and so the lawyer gets the entitlement of the response, particularly if lawyers are representing clients, lawyers are not supposed to go directly to a client that's represented by counsel. So I'm not sure if I'm answering the question, but the denial was directed to Shamball and directed to its legal counsel, and I'm admitted in Texas, though, if that counts. But again, we're looking at fortuities. The significance of the denial was directed toward Shamball. That's the significance. That's the qualitative issue. This is not a form of a substance. The denial was directed . . . The only reason that's the case, though, counsel, is that Shamball was served with a subpoena in South Carolina, multi-district litigation, and I don't see how that's enough to then avail Steadfast to being held into the courts of Texas. The plaintiff's activities in Texas don't justify venue or jurisdiction over a defendant that's not resident of Texas, right? The court is misplacing the issue that's at hand. Perhaps I am, so I hope you cleared up. I'm trying to, and I'm trying to . . . I see every state in the record represented but Texas in terms of involvement and lawyers and companies and cituses and all that sort of thing, but Texas is very attenuated here. Again, it's a form of a substance. It's not attenuated. When . . . this is a $20 million policy. When Shamball is named as an insured, as was Northstar, separately, by a separate endorsement, there are conferring of rights. When the denial is issued to Shamball, whether it's a legal representative of Shamball or even to the parent company of Shamball, Shamball is the one that's denied the coverage. Just to explain how this really works, MCOR has no standing in this issue. You don't have to believe me. The district court in Connecticut has already dismissed MCOR as a party defendant. What we're faced with here is Shamball on a dispute in Texas arising out of a denial of coverage arising out of its Texas operations, meaning that they had to compile documents to respond to this subpoena, which was incurred in Texas. That's where Northstar's offices are, in Austin. The compilation, review, and assimilation of all these documents, that expense and that injury occurred in Texas. What's the limiting principle? I mean, under your theory, steadfast could be sued in any state in the union? No. It depends if they have minimum contacts. The minimum contact here is . . . But if they have an insured in, I don't know, Oregon, they can be sued there. If they have an insured or they're in other litigation . . . No, you're . . . . . . there. I'm struggling with what the limiting principle is. The limiting principle is this. Are there sufficient contacts with this insured and the insurance company? And that's what counts. They could have 100,000 insurers unrelated to Shamball. That's not going to be dispositive on whether that's to incur jurisdiction. But what is significant is there are duties and obligations owed to a named insured under a $20 million policy. Once they insure that risk, they have now developed an obligation to protect that named insured, that citizen of Texas, arising out of Texas operations that are described in the application as being those tasks and obligations that go to the policy. The business operations for which liability exposures arise is the crux of this issue. That's the meaningfulness of this policy. Not whether who negotiated. That's fortuitous. That doesn't matter. The client, the policyholder in this case, Shamball, was deprived of $1.7 million of coverage. How about if the dispute had cost $20 million? It would have exhausted the policy. That makes it a significant contact that Steadfast decided to insure this risk. This court is ultimately going to have to reconcile the Wien decision where we have a tort directed to a citizen of Texas and whether or not the Wien case is distinguishable from the Eastern Concrete case and the Halliburton case. Halliburton, in fact, Judge Wilson-Tanzo, I know the part of your question, in Halliburton there was a venue provision. The court found that there was not sufficient context to trigger coverage in a foreign state. One of the reasons for that was there was a no tort, unlike what we have here and what we had in Wien, and secondly, in Halliburton, it was a declaratory relief action. It wasn't a wrongful bad faith denial of coverage case. That's a big significance because what we know in Texas is that where the insured sustains a loss in Texas directed by a third-party form or foreign entity, that is a trigger of personal jurisdiction. I lodged with the court a couple of days ago, the Supreme Court of . . . An insurance company can be sued anywhere and insured incurs a loss. Where there's an agreement to insure a risk and that risk was looked at and agreed to by application and underwriting review, they undertook a meaningful contact with . . . We can litigate what the parameters of the risk undertaken were anywhere an insured suffers a loss. Not anywhere, but in Texas. How do you limit it? Where the insured sustained a loss is a deciding factor. But the subpoena came from South Carolina. Why wasn't the loss sustained? Because the subpoena required the insured to respond in Texas. That's where they're located. That's where their documents are located. The litigation is in South Carolina. Litigation could have been in Alaska, South Carolina, or Timbuktu. It's where the response to the subpoena is required to be responded to, which was Texas. That's where they incurred the injury. That's where they incurred the expense. That's where they incurred the injury of the denial of coverage. It's a qualitative issue, not based on fortuities of where policies are issued or not. In fact, if the case, if this decision is to affirm the district court's case, Sean Bosco would now have to be defending a case in Connecticut, which has nothing to do with this dispute. MCOR has been dismissed. The district court judge in Connecticut already recognized that MCOR has no business in this. And if the parent company who negotiated this policy is a deciding factor, they've already been dismissed because they don't have an interest. The party in interest is the one who's aggrieved, the one who's injured. And that's the Wien decision. Importantly, in the Luciano case, and I know it's a state court, Supreme Court case, but it's on a confirming of specific jurisdiction based on tort. And the Supreme Court of Texas said they define actionable conduct in decision, a deliberate tort. And it says, when you have a deliberate tort, there's no need to look at the additional facts, such as business activities and a relationship with the foreign state. The public policy behind that, and Wien does discuss that, the Fifth Circuit, and Wien also talks about this, the legal significance of a tort affecting and injuring an insured in Texas, in the foreign state, allows redress to that party in its own venue. Could you imagine every home policyholder having to go sue in a foreign distant land when they're denied coverage, whether it's an earthquake policy, or whether it's a pollution policy, or whether it's an E&R policy. Policyholders are entitled to go to the court of convenience in their form to pursue the policy, the carrier, who agreed to insure those risks. That's the meaningful part of this case. They agreed to insure those risks. They could have denied coverage by saying we're not going to underwrite this risk. They chose not to. And Halliburton in the Fifth Circuit decision really looked at the venue provision and said there's nothing more here, and plus the choice of law, the arbitration, and the venue provision is all in a foreign state that we're not going to assert jurisdiction. All right, Mr. Leroy, you have red light. Thank you, sir. You exhausted your initial time, but you have reserved your rebuttal time. Do I have five minutes to reserve? Yes, sir. Thank you, sir. All right, Mr. Krosnoff? May it please the court, counsel, I'm Wade Krosnoff, and I'm here along with Clarence Lee on behalf of the Appley Steadfast Insurance Company. The issue before this court is whether Steadfast is subject to specific jurisdiction in Texas on a claim for coverage under Connecticut Surplus Lines policies, which were all negotiated, underwritten, and issued in states other than Texas for the cost of responding to a subpoena that was served on Shambaugh in Indiana in connection with a South Carolina MDL proceeding. The answer is no for two principal reasons. First, the jurisdictional contacts that Shambaugh is relying on here are not those that this court has said are relevant in an insurance coverage dispute like this one, that is, the contacts relating to the procurement and enforcement of the policy. Second, Shambaugh's causes of action do not arise out of or relate to Steadfast's alleged Texas contacts as required by the second prong of this court's specific jurisdiction analysis. Now, the first thing we've heard from counsel was that this case is all about torts that were committed in Texas. Well, that's where I was going. I mean, you heard our exchanges earlier. I asked about procurement of the policies and negotiation of the policies and all that, and what counsel opposite is going toward is this tortious activity which is directed to a Texas entity. Yes, and I think that argument fails for a couple of different reasons. One, as the court noted, that wasn't raised by them in the briefing before the magistrate judge and was first raised really in the objections, and under this to the magistrate judge's report and recommendation, we've cited this court's precedent to say that's too late, but even more fundamentally than that, there is case law that we've cited saying that when extra contractual claims like these arise out of contract claims, you need to do the jurisdictional analysis that applies to contract claims rather than tort claims, and they have asserted a breach of contract claim and declaratory judgment in this case, I believe, too. That rule really makes sense, especially under the context of Texas insurance law. The rule in . . . the general rule in Texas as outlined in the USAA versus Menchaca case is that in order to recover on bad faith and these statutory claims, the insured must generally first establish a right to recover under the policies, so you're kind of putting the cart before the horse to say you look at the jurisdictional contacts for torts rather than contracts. What about the idea that Shambaugh had to comply with the subpoena, collect its documents, and do those sorts of things in its Austin affiliate's office, North Star's office? Well, Shambaugh is . . . I believe has locations all over the country based on that . . . Well, but I mean, do you dispute that they had to comply with the subpoena based on Texas documents? So in part, we haven't contested that they presented some proof that the subpoena implicated their Texas operations and that some of the documents were stored there and . . . Were the documents related to Texas claims in the South Carolina MDL? Well, there's no proof on that. There were some Texas . . . the MDL has thousands of cases in it and so . . . But there are several hundred from Texas. Yes. There were no doubt . . . Is that enough though? Some in Texas. No, because you do have to look at, for the purposes of jurisdiction, you go back and look not at the underlying claim, not at the underlying insured event, but based on this court's decision in the Eastern Concrete Materials case, you look to the contacts relating to the procurement and enforcement of the policy rather than the underlying claim or event. And so, those contacts really aren't relevant here. I also want to just push back on this idea that there was a tort committed in Texas. If you look at the record in this case, the claim correspondence is in there. It shows that the notice of claim was submitted on MCOR's letterhead from its risk manager's office in Connecticut, that it was submitted to the claims offices in New Jersey, but it certainly wasn't submitted in Texas. That led to correspondence among Shambaugh's South Carolina-based Defense Council and the California Coverage Council and Steadfast and then also Steadfast Washington, D.C.-based Coverage Council. There were no communications directed to Texas. There was no phone call to Texas, no letters directed there, and the claims decisions under this record were made in New Jersey rather than Texas. There was no tort that was committed in Texas here. The only actions in Texas was the response to the subpoena? In part, but again, this was by . . . the response costs were incurred by their defense council that was based in Rhode Island and they had local council in South Carolina. Were there documents in Texas? According to their proof, there may have been some, but the council was all located in other states. They were responding to a subpoena that was served in connection with the South Carolina proceeding and that shouldn't be enough. We should look to the . . . in this case, we really need to look to the contacts relating to procurement and enforcement as this court did in the Eastern Concrete Materials case just a few years ago. In that case, this court also . . . it involved a situation where there was an insured subsidiary involved and the court looked to the location of the contractual relationship and negotiations between the named insured and insurer in determining personal jurisdiction over a dispute between the insurer and insured subsidiary. Instead, you look to the procurement and enforcement of the policy. All of that, as has been discussed, occurred in upstates other than Texas. The enforcement also occurred in other states. The procurement, under this record, undisputedly occurred in Connecticut, New York, and Massachusetts where the policies were underwritten, negotiated, issued, and all of that. The enforcement occurred in other states where this claim correspondence was generated and went around and none of that was in Texas. Also, it's important, I want to call the court's attention specifically to the case a few years ago. I believe Judge Stewart authored that opinion and it expressly rejected the argument, one of the arguments that's being made here, that an insurer was subject to jurisdiction in Texas because the insured was located in Texas. In that case, both the named insured and the additional insured were Texas entities, but the court nevertheless concluded that it lacked Oklahoma and Louisiana, I believe, was the situation there. The same result should apply here. Halliburton really can't be distinguished. I know they argued in the reply brief that, well, there was only one Texas contact alleged in that case and here we allegedly have multiple contacts, but if you look at it, again, additional insured, named insured in Texas, there was a Texas surplus lines insurer that issued the policy, although not in that capacity. That's an argument being made here that steadfast is either an authorized surplus lines insurer or an admitted insurer and that that somehow confers jurisdiction. This court rejected that argument in Halliburton. I think in Halliburton there was also even a related coverage action that the insurer had participated in and the court said that wasn't sufficient to confer jurisdiction. Here they pointed to some other lawsuits that steadfast has been involved in Texas, but they admit in their briefing and we've cited the various pages in the brief where they admitted those other lawsuits are entirely unrelated to this one and that's just not enough under this court's precedent. If you look at the Payne-Weber case, this court suggested that you would have to have a related lawsuit, participation in a related lawsuit to establish jurisdiction and you don't have that here. In the Halliburton case, again, there was a related lawsuit and the court found that even that wasn't sufficient under the circumstances of that case. That's just not . . . I think if the court looks at the Halliburton decision, it's not one that can be distinguished and should control the outcome of the personal jurisdiction issues in this case. Now, we've also heard the argument here that where the negotiations occurred is fortuitous and I don't understand that argument. That's where the business relationship of the parties was formed. They retain a broker in New York who communicates with steadfast underwriters in Boston and also in New York about procurement of the policies. That gets worked out. The policies are bound and issued in New York, in Boston and they're issued to a named insured in Connecticut. There's nothing fortuitous about that and you can't just dismiss those contacts as fortuitous when this court has said those are the very contacts that you have to look at in a breach of contract claim. Now, they've also raised some additional arguments here. As I've mentioned, when you look at the . . . they pointed to the fact that they're an insurer and the thing that they've left out is that the policies were not issued in those capacities. If you look at the very first page of the policies in the record, they say these were issued under the . . . these are Connecticut surplus lines policies. They were not issued in any sort of capacity by Steadfast as a Texas-admitted or Texas-authorized insurer. The reason that's important is you go back to the second prong of this court's specific jurisdiction analysis that says not only do you have to have minimum contacts with Texas, but they also have to . . . the causes of action being alleged have to arise out of or relate to those contacts and that requirement is not that Steadfast is a Texas insurer. I also want to touch briefly on an argument that was raised in the briefing. They have argued that the fact that the policy has a nationwide coverage provision, that that somehow triggers coverage nationwide. I think Judge Wilson's questions were appropriate. What's the limiting principle here? There's not one. Under their argument, Steadfast can be sued anywhere in the country when it issues a policy to a named insured that has, I think in this case, the record doesn't reflect the exact number, but there are many, many insureds across the country. They're saying essentially that you can be sued anywhere. This nationwide coverage argument though is one that this court addressed in the Perez versus Pan Am Life Insurance Company case. Back in 1996, we've also cited some other district court opinions that have addressed that issue and said the fact that you have a liability policy that has a territory of that applies nationwide or worldwide doesn't subject you to jurisdiction nationwide or worldwide. We've also cited the court to an opinion written by the Seventh Circuit a few years ago. It was actually written by, at that time, Judge Amy Coney Barrett. She addressed this nationwide jurisdiction argument and said we're not going to follow that. We're not going to recognize that doctrine. The first reason the opinion says is that it's inconsistent with modern Supreme Court cases such as Worldwide Volkswagen and others that disapprove of foreseeability of suit in a forum as a basis for jurisdiction. That's the basis for some of the cases that have recognized this theory. As that opinion also points out, there is, in the cases that have recognized that theory, it is typically involved liability policies that impose a duty to defend on the insurer anywhere within the coverage territory. You really don't . . . The court distinguished that from a situation that was before the court which was a liability policy that just said the insurer may defend but is not obligated to defend. It has the right but not the duty. That's the exact same situation here. We have policies that give us the right but not the duty to defend Shambaugh on covered claims. Those provisions are at page 44 and 177 of the record. That's all I have on jurisdiction unless the court . . . You've urged in your brief and otherwise that a number of the arguments made were waived or forfeited because they were raised late, etc., etc. Counsel opposite says, well, manifest misjustice, miscarriage of justice, whatever, whatever. The question is just to stand by that a number of these are waived or forfeited and if we the case and not deal with the other ones. I know you've addressed them anyway. Several of them that we think were raised and I think they were primarily the Texas tort argument and the nationwide jurisdiction. I think there may have been one other. It was about Article 21.42 of the Texas Insurance Code. Article 21.42 was never raised below that I can tell. The other two were raised after the magistrate judge issued his report and recommendation. Under this court's precedent that we've cited, those are waived unless there's some sort of miscarriage of justice here. One man's miscarriage of justice is another man's just regular issue that should have been raised and doesn't cause any fundamental constitutional problems if the court doesn't address it. On all of those, we've addressed them on the merits. We think they do not have merit. I think the court can go whichever way or say it's waived and also on the merits those arguments fail because I think both of those are true. There was also a venue issue raised and the briefing wasn't addressed here today and I don't think it should. I'm happy to address any questions on that or any other questions. No, that's fine. I think the magistrate judge didn't address it. He said the parties couldn't agree on venue or something. That was way down the line of things to be dealt with. The court did have very broad discretion on that issue as well. No, that's fine. Thank you. I think we have your argument. We appreciate addressing all those arguments.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Mr. Luby. You have the right of rebuttal. You've got five minutes if you want. Corporations typically use large brokerages. They typically use companies that are in specific locations like New York City. If this Court affirms, what it's going to establish is that a policyholder aggrieved and it's not a breach of contract claim. It is a tortious denial of coverage as alleged in the complaint. A breach of contract claim is different than a wrongful denial of coverage. And that's the important part here that continues to be glossed over. If in fact a grieved policyholder, a named insured, who's got all of the rights under a policy, whether that policy was placed by a broker in New York, New Jersey, or Timbuk2, those rights conferred under that policy arising out of the claims handling practices, that's the breach, that's the tort. And counsel has misstated Manchaca and did not identify the Swinerton case. In those cases where there is a tortious breach of cover—denial of coverage and where there is a violation of the statute, an independent injury need not be had and in fact extra contractual liability is available in a failure to defend case because of the actual breach of the statutory rights afforded under the Texas Insurance Code. Again, think about what the public policy here that's being offered by Steadfast. Where the communication, the denial is issued, where the policy is negotiated, not where the insured is heard. If there's a egregious bad faith action where somebody was deprived of coverage, they have to now move from Texas or whatever state— All those things were as paramount as you say, why weren't they raised way back when instead of, you know— The entire complaint, it was. Where's your best case that says you can raise an allegation in the complaint and the issue is preserved going forward? Well, that was the whole basis of the complaint was a tortious breach of the— But you have to make the argument and put it squarely before— And as I read to you, the judge addressed that argument, the magistrate judge addressed that argument. Where did you raise it before the magistrate? It was found from the complaint. That was the allegations in the complaint. You didn't do it anywhere about the allegations of the complaint? True. Where is your case that supports that that preserves the issue? There's no case that says you can't do it that way. In other words, there's no preclusion. The record and the facts alleged in a complaint are deemed to be true and that's why— There's lots of things that are in the complaint, but if you don't present the argument for the judge to know that that's what you're relying on, how in the world is somebody supposed to go back to— The court recognized that that is why she addressed it in her—as I read to you on page 30 of their brief. She addresses it saying it doesn't matter where the injury was sustained. It matters where the tortious conduct originated and that was New Jersey. Now all of a sudden, a Texas insurer has to go to New Jersey where the origination of the tort is or has to go to New York where the broker negotiated the policy. That just makes no sense. It becomes a nonsensical issue where the aggrieved party, a policyholder in a locale, expects coverage and then has to go to a fortuitous state depending upon where the underwriter was located, which is not even an underwriting issue. This is a claims issue. Would Steadfast have filed a deck action in Idaho, assuming Shamball has a facility in Idaho? No. Idaho has no interest. Why not? Because they have no interest. Connecticut has no interest. Excuse me. Sorry. Sorry. I'd like to ask the question. If your theory is that while Shamball is in Texas and some stuff happened in Texas to comply with the subpoena, why wasn't Steadfast free to file a deck action wherever Shamball would have worked on the subpoena? The answer is very simple. Ocean Healthcare says, under Texas law, you need to comply with the subpoena insurance company under this policy that was issued here. They avoided that. Why did they not go to where their underwriter is located, where Steadfast is located, is Schoenberg, Illinois? We brought a motion to transfer to Illinois, their headquarters. Their headquarters, their hometown, where the principal place of office is, where they domiciled, where the underwriting took place. The answer was, Illinois law, like Texas law, says that a compliance with a subpoena triggers a duty to defend under this type of policy. That's why they forum shopped to Connecticut, where there's no law on that point. And the fact that Connecticut is the domicile right now of this litigation, when MCOR has already been dismissed because it has no standing, because it has not incurred any loss, shows you the absurdity of what's happening here. Now a Texas insurer has to go to Connecticut, which has absolutely no interest in the outcome of this case. That's what this is resulting in. And a policyholder who's agreed to it's denied, deprived of policy benefits as set forth in the complaint, fictitious breach, now has to go to some place they don't even know where it's going to be because they don't know where the underwriter was or where the broker's agent was or the surplus agent who was communicating to the underwriter where that person is located. That's not the purpose of this. A policy is to protect the insured under the terms and conditions of the policy, whether that policy was issued at a state, in state, it confers rights that a reasonable person would rely upon to secure coverage that was promised. This is a claims handling issue, not an underwriting issue. And where the injury took place, just like any policyholder, is entitled to have redress in that state. That's where it comes down to. All right. You have a red light. Mr. Leroy, you've- Thank you so much, Your Honors. You've wrapped up. All right. Thank you, counsel, both sides. Fourth case, it'll be submitted. Parties in the third case, you can come up. The panel's going to stand in about a five-minute recess, and we'll be right back up, but you can come on up to the table and be ready for when we come back.